ELIO CAPITANI, Plaintiff-Appellee, *v.* WALTER P. MILLER, Defendant-Appellant.

Second District   No. 78-79

Opinion filed January 30, 1979.—Rehearing denied March 19, 1979.

WOODWARD, J., dissenting.

Theodore A. E. Poehlmann, of Kell, Conerty & Poehlmann, of Woodstock, for appellant.

Frank M. Daly, of Waukegan, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant appeals from a default judgment rendered against him arising out of injuries sustained by the plaintiff when the defendant's automobile collided with the plaintiff's bicycle. The accident occurred in the City of North Chicago on July 29, 1976.

The defendant was a resident of Pennsylvania and left the State of Illinois immediately after the accident and before the complaint was filed. The plaintiff's attorney who had been informed that the defendant was insured by Travelers Insurance Company promptly notified the Rockford office of that company and the Travelers' Rockford office acknowledged notice of the accident on August 10, 1976. Following this up, the plaintiff's attorney sent a notice of attorney's lien to the Rockford office of Travelers on September 30, 1976, which Travelers also acknowledged. The defendant was not an individual insured of Travelers but at the time of the accident was driving a rental automobile of National Car Rental, which was insured by Travelers.

No action having been taken by Travelers toward settling the claim and the defendant being a resident of Pennsylvania and not within the jurisdiction of Illinois, the plaintiff on November 22, 1976, filed suit against the defendant and served the Secretary of State with summons as provided by section 10—301(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 10—301(b)). A copy of the complaint and summons and an affidavit of compliance with the statute as to service of process on the Secretary of State was included in a notice sent by registered mail to the defendant at his last known address, as required by statute. This was addressed to the defendant at 540 W. Mermaid Lane, Philadelphia, Pennsylvania, which is the address defendant indicated as his home address on the North Chicago traffic accident report. The plaintiff's attorney also notified Travelers Insurance Company in Rockford that he had filed suit against the defendant. The notice to Travelers indicated the case number and informed Travelers that he had served the Secretary of State with summons. The notice addressed to the defendant was postmarked January 6, 1977, and the Secretary of State acknowledged receipt of the summons and complaint as having been served on him on January 13, 1977.

The registered mail notice sent to the defendant was returned unopened with the notation thereon "Refused—not good at above address." Thereafter, nothing further was heard from either the defendant or Travelers. On April 13, 1977, no answer or appearance having been filed by the defendant, plaintiff moved for a default judgment. The trial court granted the motion for default judgment and on

May 6, 1977, a jury, empaneled to determine damages only, awarded the plaintiff $25,000 in damages.

On July 5, 1977, the plaintiff's attorney notified Travelers of the default judgment and on July 13 their attorney moved to vacate the judgment based on section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) and thereafter filed a memorandum in support of said petition. The gist of the memorandum was that the defendant had never received the summons or notice of suit and was unaware of such suit until July 6, 1977, after the default judgment had been entered. In support of this contention the defendant filed an affidavit suggesting the existence of a meritorious defense and asserted due diligence after notice of the default judgment. Apparently this motion and supporting affidavit were filed on the basis of this being a section 72 petition to vacate the default judgment. After hearing the arguments of counsel, the trial court on October 19, 1977, denied the petition on the grounds that the defendant had failed to prove due diligence·on his part.

On November 16, 1977, the defendant filed a motion for leave to file his petition under section 10—301(e) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 10—301(e)). In this motion the defendant stated that he was entitled to make his appearance within 1 year after receiving notice of the judgment because he was a nonresident defendant who had not received notice and a copy of the process by registered mail, as provided in the statute. In support of this contention the defendant submitted two further affidavits, one by himself and one by his father. The affidavit of the defendant stated that he was known as Walter P. Miller III, whereas his father was known as Walter P. Miller, Jr.; that the defendant had lived at 540 W. Mermaid Lane, Philadelphia, Pennsylvania, at the time of the accident in question (July 29, 1976), but at about September 1, 1976, he had moved to another address in Pennsylvania and that he was never served with a copy of the summons and complaint in the suit filed against him and that he never refused to accept such notice. He acknowledges that he was aware that a registered mail envelope came to his father's house sometime after January 1, 1977; however, he did not know that a suit had been filed against him.

The affidavit of Walter P. Miller, Jr., the defendant's father, stated that he recalled a registered mail letter being addressed to Walter P. Miller, which came to his address at 540 W. Mermaid Lane, but not knowing the sender of the letter he refused it, *believing it was intended for someone else.*

On this basis, the defendant argues that while his petition should have been granted under section 72 and it was an abuse of discretion for the trial court to deny it, in any event, the language of section 10—301(e) of the Illinois Vehicle Code clearly mandates his right to open the judgment

regardless of any question of due diligence or meritorious defense because he had not, in fact, received notice and a copy of process, as the affidavit of his father revealed to have been the case.

Thus, there are two prongs to the defendant's argument—first, that the trial court abused its discretion in denying him relief under section 72 because he had a meritorious defense and had acted with due diligence in filing his petition and, second, that the language of section 10—301(e) of the Illinois Vehicle Code automatically requires the judgment to be opened in any case where the defendant did not, in fact, receive "notice and copy of the process by registered mail," and the defendant moves within 1 year of receiving notice of the judgment to open such judgment under section 10—301(e).

■■ As to the defendant's contention to his section 72 motion, we do not regard the trial court's ruling as an abuse of discretion. Apparently the trial court, taking into consideration all the surrounding facts and circumstances, concluded that the defendant and his insurer had timely notice of the suit being filed and had for their own reasons neglected to answer or appear. We must remember that the defendant's insurance carrier had acknowledged the claim and did not deny receiving the letter dated January 6, 1977, advising them of the suit. We do not know the contents of the Travelers' file but it is reasonable to suppose that it at least gave the defendant notice of the plaintiff's action in filing suit against him. In any event, however, the defendant, knowing that he had been involved in an accident in North Chicago, Illinois, involving injury to a bike rider, certainly had reason to suppose the registered letter from an attorney in Waukegan, Illinois, might relate to that matter. His father, receiving the letter addressed to what had been until very recently his son's home, cannot be believed to have summarily rejected such letter, without previous instruction to do so from his son, or without having been told to do so upon receipt of the letter. The father states in his affidavit that he believed the letter was not intended for him. It is obvious that if it was not intended for him it was intended for his son; yet it was refused without further inquiry or attempt to provide a forwarding address. Under these circumstances, we can understand why the trial court did not give sympathetic consideration to a petition addressed to the court on the basis that the defendant was taken by surprise and had no opportunity to defend himself. We do not think, under these circumstances, that there was an abuse of the trial court's discretion in denying the section 72 petition.

■■ The second prong of the defendant's argument is based on a very literal reading of the statute, applying to substituted service, as cited above. The defendant argues that the language "who shall not have received notice and a copy of the process by registered mail" means

literally and exactly what it says and in his case he did not receive such notice, therefore, he has the right to appear within 1 year after notice was given of the judgment against him and this constitutes timely appearance. We do not consider that the bare words of the statute so clearly overcome its evident intent. Liberal provisions of the statute were intended, we think, to protect persons genuinely unaware of the proceedings against them and not advised because of some mistake, oversight, or change of location causing a lack of communication. We do not think the case before us was such a case. It is apparent that the defendant simply evaded the notice addressed to him by the plaintiff's attorney. A careful reading of the defendant's personal affidavit reveals that what he denies is not that the notice was mailed to his last known address but that "he received no copy of the summons." He does not say in his affidavit that he was unaware that a registered letter had been sent to him by Waukegan attorneys. The statute requires only that the copy of the summons and complaint be sent to the last known address of the defendant. We think that within the fair intent of the statute a registered letter addressed to such last known address which was received by the defendant's father at such address complies with the intent of the statute. Since the defendant does not deny he had knowledge of the letter, but merely denies that he "received" the summons, it is entirely reasonable to assume that he was advised by his father that the letter had been received before the father refused it. It would be unreasonable to suppose otherwise.

If we likewise carefully read the affidavit of the defendant's father in support of his son's affidavit, we note that it is carefully worded to the effect that the defendant did not "reside" at the address—540 W. Mermaid Lane—at the time the registered notice was received there, but there is no statement that he had in any way lost touch with his son at that time. Nowhere in his affidavit does the father, Walter P. Miller, Jr., state that he did not inform his son that such a letter had been received by him and it is again reasonable to suppose that he did so inform him. This is especially true where the son and father had the *same name* and the father did not believe that the letter "was intended for him."

■■ In order to avoid this difficulty, the affidavit states in paragraph 4 thereof that the father "acting on his own behalf and as the person to whom that letter was directed refused the service of it." The father was— as the affidavit states—76 years old at that time and presumably less active in business matters than his son. His son had recently traveled in Illinois and had been involved in an accident in the vicinity of where the letter came from. Yet we are asked to believe that the father thought the letter was intended for him, rather than for his son, therefore he was acting "on his own behalf" when he refused it. Then, a curious discrepancy is revealed in the next paragraph of the affidavit which makes it even less

persuasive. In paragraph 5 of his affidavit, the father says he "verily believes that said letter was intended not for him but for someone else." We thus see that in paragraph 4 of the affidavit the father says he believes the letter was intended for him and in paragraph 5 thereof he says the letter was not intended for him. It is evident that the latter statement is correct—that he did not believe it was intended for him. But the obvious corollary of that is that he believed it was intended for his son. While a father is not the agent of his son to receive registered mail, we think that where a notice in compliance with the Illinois Vehicle Code on substituted service is addressed to the correct name of the defendant at his last known address and his father, having the same name, receives such letter at such address and has no reason to believe that the letter was intended for any one but his son, but still refuses it, the intent of the statute has been fulfilled. We take judicial notice of the fact that Gladwyne—the new address of the defendant—is adjacent to Philadelphia and since the defendant had moved only 2 months before, there is no reason to suppose, and neither affidavit asserts, that the father and son were out of touch with each other at the time the letter was received. To hold that in these circumstances the substituted service on the Secretary of State is not good because the defendant did not actually open and read the letter is to render the statute less effective in protecting Illinois citizens against nonresident tortfeasors than we had supposed it to be.

The accident happened in July of 1976. The insurance carrier had been explicitly told and has acknowledged being told of the claim and of the suit and does not deny being advised substituted service had been invoked against its insured in a suit filed under a designated court number. A registered letter was mailed to defendant at his former home. Defendant's father acknowledged that such a letter was delivered and neither the father nor the defendant deny the defendant was aware of the refusal of said letter by the father. While the courts of Illinois are jealous in affording due process to all—residents and nonresidents alike—we do not feel due process requires us to recognize the circumstances which occurred here as a failure to meet the requirements of due notice to the defendant. We are also in accord with the defendant that it is desirable to hear cases on their merits and default judgments are not favored, but we point out that the defendant and his liability carrier had many months to come forward with a meritorious defense, if they had one and wished to invoke it, but they did not come forward with such defense. At this late date the desirability of hearing the case on its merits loses some of its appeal.

The defendant is not entitled to have the judgment vacated on the strength of his having moved or on the basis of the mere fact that the

registered letter containing the summons was returned unopened. As pointed out in *Duke v. Paul* (1974), 20 Ill. App. 3d 500, the defendant's contention that he did not receive the copy of the summons by registered mail does not automatically open the judgment. As the court said in *Duke*:

"The defendant's contention is that she did not receive the requisite notice and a copy of the process by registered mail and, therefore, the default judgment should have been vacated. However, a careful reading of the statute reveals that when a defendant does not receive the notice and a copy of the process by registered mail he is not automatically entitled to have the judgment vacated. The statute allows such an unnotified defendant to appear and answer the plaintiff's allegations and then a proceeding shall be had as if the defendant had appeared in due season and no judgment had been rendered. At this proceeding if it appears that the judgment should not have been entered against the defendant then it can be vacated, altered or amended; otherwise it stands as originally entered. There is, therefore, no automatic right to have a default judgment vacated upon a showing that the defendant did not receive the notice and a copy of the process as required by the statute." 20 Ill. App. 3d 500, 505.

The defendant here, just as in *Duke*, contends he did not receive the requisite notice and a copy of the process by registered mail and, therefore, the default judgment should have been vacated. The court in *Duke v. Paul* concluded from the facts in that case that:

"Subparagraph (e) of our nonresident motorist statute was intended to afford an unnotified defendant an opportunity to plead to the merits of a case and avoid a default judgment. In this respect the statute is in agreement with the general proposition of law that courts do not favor default judgments. However, this section of the statute was not intended to reward dilatory and evasive tactics of a defendant's insurance carrier. The record in the case at bar shows that the defendant's insurance carrier, Preferred, knew of the pendency of the suit and as of May 5, 1968, knew that the defendant was leaving the State of Illinois. Preferred also knew in late August of 1969 the new address of defendant in Hawaii. There was also correspondence between the plaintiff's attorney, Preferred, and the attorneys for the defendant as to whether proper service had been made upon the defendant. In addition, plaintiff's attorney contacted Mr. Beece, the claims manager of Preferred, in regards to locating the defendant. Preferred had a contractual obligation with the defendant to defend this suit and indeed Preferred retained attorneys on defendant's behalf. However, having all the knowledge previously cited, Preferred

chose to do nothing until a default judgment was entered. It was not the intention of our State Legislature in providing a means for an unnotified defendant to avoid a default judgment to allow a factual situation such as the case at bar to come within the ambit of section (e) of our nonresident motorist statute. A defendant's insurance carrier cannot embark upon its contractual obligation to defend a suit and then do nothing until a default judgment is entered and then seek to utilize section (e) of the Illinois nonresident motorist statute. To allow such actions would pervert the purpose of the statute and sanction dilatory and evasive conduct." *Duke v. Paul* (1974), 20 Ill. App. 3d 500, 506.

Here the registered letter was sent as required by statute. Travelers was informed and acknowledged receiving notice of the accident on August 10, 1976. Travelers was sent and acknowledged receiving a notice of attorney's lien on September 30, 1976. Travelers was informed by plaintiff's attorney that he had filed suit, was given the case number of the suit and was also informed that service was had by service on the Secretary of State. Under the circumstances, we are of the opinion that the trial court was correct in denying defendant's motion to vacate the default judgment.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH, J., concurs.

Mr. JUSTICE WOODWARD, dissenting:

I must respectfully dissent from the holding of the majority opinion that defendant may not have relief by the application of section 10—301(e) of the Illinois Vehicle Code under the facts of this case. The plaintiff secured jurisdiction over the defendant by service on the Secretary of State and mailing a copy of the summons and complaint to the defendant's last known address by registered mail as prescribed by the provisions of the nonresident motorist statute (section 10—301(a) through (e) inclusive). A portion of this statute contains the following language:

"(c) The court in which the action is pending may order such continuances as may be necessary to afford the defendant reasonable opportunity to defend the action. * * *

* * *

(e) When a final judgment is entered against any non-resident defendant who *shall not have received notice* and a copy of the process by registered mail, required to be sent him as above

provided, and such person, * * * *shall within one year after the notice* in writing given him of such judgment, * * * appear in open court and petition to be heard touching the matter of such judgment, * * * the person so petitioning may appear and answer the plaintiff's allegations, and thereupon such proceeding shall be had as if the defendants had appeared in due season and no judgment had been rendered. And if it appears upon the hearing that such judgment ought not to have been made against such defendant, the same may be set aside, altered or amended as shall appear just; otherwise, it shall be ordered to stand confirmed against such defendant. * * *" (Emphasis ours.) Ill. Rev. Stat. 1975, ch. 95½, par. 10—301.

In order to avoid due process objections based on the fourteenth amendment, the nonresident motor vehicle statute provides for service upon the Secretary of State and service by registered mail to the nonresident defendant at the place of his last known address in order that the nonresident defendant would be informed of the suit brought against him and to provide him with an opportunity to defend. It is apparent from subparagraph (e) above, that the legislature was aware that there would be instances where a nonresident defendant would not receive the registered mail containing the summons and complaint. To provide for this contingency, the legislature has provided generous provisions for relief for a defaulted defendant who had no notice or knowledge of the litigation. These provisions are more liberal than the requirements for relief under section 72 of the Civil Practice Act. There is good reason for this difference, as a nonresident motorist served at his last known address by registered mail is more vulnerable to a default judgment than one who has been personally served with a summons. Since no question is raised inferring an ambiguity, section 10—301 must be construed within the meaning of the plain language and applied in light of its apparent purpose, which is to compensate for the possible injustices inherent in a default judgment entered on the basis of substituted service as provided by that act.

Section 10—301(e) indicates two preliminary requirements for the application of that section: (1) a final judgment entered against a nonresident defendant who has not received notice and a copy of the summons and complaint by registered mail as provided by section 10—301(b), and (2) the defendant must appear within one year after notice in writing given to him of such judgment and request the court to grant relief from such judgment. If a hearing reveals that these requirements are met, the default judgment must be vacated as the statute provides, in part: "* * * thereupon such proceeding *shall* be had as if the defendants

had appeared in due season and no judgment had been rendered." (Emphasis added.) Applying the facts before the court in this cause to the above requirements, the defendant qualifies for the relief he requests pursuant to section 10—301(e).

The majority opinion relies on two points as a basis for denying defendant the hearing that is mandatory under the language of section 10—301(e). First, that the correspondence between the plaintiff's attorney and the defendant's insurer as to the pendency of the law suit cancels the defendant's right to relief under subsection (e). In effect this theory means that notice to the insurer is notice to the defendant. The ramifications of such a theory could be quite widespread. For instance, let us assume that the coverage in this particular case were only $10,000 while the judgment is for $25,000; under these facts the defendant has been saddled with a personal obligation of $15,000 without any notice whatsoever of the proceeding and without any opportunity to secure relief as contemplated by the subsection in question. Furthermore, the facts of this case show that the defendant was the driver of a rented car and that his relationship to the insurer in this particular fact situation is much more tenuous than that between a policyholder and his insurer who has chosen to underwrite him after an opportunity to investigate the background and record of the assured. If such a change is to be made in the law as results from the holding of this case, then the legislature should make this change and not this court.

Second, the majority opinion implies that the relief provided by section 10—301(e) is denied because the defendant's insurer was "playing games" with the plaintiff's attorney since it admitted that it received his letter advising of the filing of this lawsuit and after such notice took no steps to defend or contact the plaintiff's attorney. In oral argument, defendant's attorney acknowledged that through inadvertence or negligence within the insurer's office, no further action was taken to follow this lawsuit. Certainly this was a lack of diligence or negligence and, unfortunately, mistakes such as this do occur; however, the evidence in the cause before this court does not demonstrate that the insurer was playing games or was engaging in dilatory tactics. For instance, the affidavit of the plaintiff's attorney shows that the insurer wrote to the plaintiff on August 10, 1976, 12 days after the accident, stating that an attempt had been made to contact him and the letter suggested that the plaintiff call the insurer collect. Further, the insurer promptly acknowledged receipt of plaintiff's attorney's notice of lien and indicated a willingness to discuss the matter and suggested that he send pertinent reports and bills to it. Furthermore, defendant's attorney sought relief from the default judgment as soon as he learned of it, which was less than

one year after the accident. There is no evidence of intentional·dilatory tactics on the part of the insurer as was the situation in *Duke v. Paul*, relied on by the majority.

Defendant's affidavit filed in support of his petition in this cause states in part as follows: that his true name is Walter P. Miller III; that he is presently 40 years of age and his father, Walter P. Miller, Jr., is 76 years of age; that on July 26, 1976, he resided with his father at 540 West Mermaid Lane, Philadelphia, Pa.; that on or about·September 1, 1976, he removed himself from the premises where he resided with his father and since that date he has resided and presently resides at 1165 Maplecrest Circle, Gladwyne, Penna. 19035; that in truth and in fact he has never been served with summons in the above-entitled cause either by registered mail or by any other form of service whatsoever; that he had no knowledge of the existence of the suit on April 13, 1977, when default was entered against him or on May 16, 1977, when a judgment was entered against him; that on questioning his father, he is *now* aware that a registered mail envelope came to the home of Walter P. Miller, Jr., his father, shortly after the first of the year, 1977. This affidavit was dated November 8, 1977.

The affidavit of Walter P. Miller, Jr., the defendant's father, filed in support of the defendant's petition for relief in this matter, states in part as follows: that Walter P. Miller III, his son, has not resided at 540 West Mermaid Lane in Philadelphia, Penna. since September 1, 1976; that he recollects that a letter did come addressed to Walter P. Miller and not knowing the sender of that letter, and acting for and in his own behalf, as the person to whom that letter was directed, he refused service of it; that he does not know the contents of that letter but the letter was a registered letter and he verily believes that said letter was intended not for him but for someone else.

As previously indicated, it is my opinion that the provisions of section 10—301(e) should be liberally construed in favor of providing relief from judgments or decrees which result from a default. This rule was applied in *Park Avenue Lumber & Supply Co. v. Niles A. Hofverberg, Inc.* (1966), 76 Ill. App. 2d 334, in a case involving relief pursuant to section 72 of the Civil Practice Act. As previously indicated there is even more reason to apply this approach to a defendant seeking relief under section 10—301(e) as the only requirements set up by the legislature are that the defendant appear within one year and that he show that notice was never given to him.

The majority opinion takes the opposite approach in construing the statements made by the defendant and his father in the affidavits set forth above; in fact many conclusions and inferences are made by the majority which are contradicted by the affidavits or there is no support in the

record, such as: (1) it is reasonable to suppose that Travelers at least gave the defendant notice of plaintiff's action in filing the suit against him; (2) defendant, having been involved in an accident in Illinois, had reason to suppose the registered letter from Waukegan might relate to this matter; (3) defendant instructed his father to reject the registered letter; (4) it is obvious the letter was intended for the son, if not for the father; (5) it is apparent that defendant simply evaded the notice addressed to him; (6) it is entirely reasonable to assume that defendant was advised by his father that the letter had been received before the father refused it; (7) no statement is made that the father had lost touch with his son and it is reasonable to suppose that the father informed the defendant about the letter; and (8) the obvious corollary is that the father believed that the letter was intended for his son.

The central factual question before the trial court and before this court is whether or not the defendant had knowledge of the pending lawsuit prior to July of 1977. The defendant has stated under oath that he had no such knowledge. Likewise the defendant's father states under oath that he did not know the contents of the registered letter and he refused it and that he did not know the sender of the letter. As pointed out above, there was no hearing conducted by the trial court and consequently the trial court was in no better position to determine the credibility of the defendant and his father than this court.

The majority opinion quotes extensively from the case of *Duke v. Paul* where the court refused to apply and grant relief under section 10—301(e). Analysis of the facts of that case reveal a far different situation than presented here. In that case the accident was on February 22, 1968; the defendant (insured) advised the insurer on May 5, 1968, that she received a letter from the plaintiff's attorney and she requested the insurer to act as soon as possible as she was moving in June 1968. In August 1969, the insurer secured the defendant's new address in Hawaii; in May of 1971 a default was entered against the defendant (this was three years after the accident); the insurer moved at first to quash the summons in December of 1971; moved to vacate pursuant to section 10—301(e) in July 1972 (this was over four years after the accident); plaintiff's attorney ascertained part of the above information by discovery of the insurer's file; the court conducted a hearing and took testimony; plaintiff's attorney related various discussions with the insurer's representatives in regard to the validity of the substituted service on the defendant and it was shown that the insurer's representatives advised the plaintiff's attorney that he "was out of luck" because the service was invalid.

The decision in *Duke v. Paul* is based upon (1) the dilatory tactics of the insurer, (2) the long period of time between the occurrence and the attempt to vacate the default and, (3) the fact that the defendant (insured)

714

had knowledge of the claim and had requested the insurer to act promptly as she was moving to Hawaii. None of the foregoing facts are present in this case, and therefore *Duke v. Paul* is not applicable. Having in mind that the law does not favor default judgments and that our judicial system is based upon fundamental fairness where each party is given an opportunity to present his side of the case in an adversary proceeding, attention is invited to the following facts: (1) that the defendant has presented evidence of a meritorious defense; (2) that the plaintiff waited for more than 30 days before advising the insurer of the default judgment; and (3) that plaintiff's attorney knew that by taking a default judgment, it could be set aside within one year and tried on its merits under the provisions of section 10—301(e). Under the foregoing circumstances it is my opinion that defendant is entitled to the relief contemplated under section 10—301 even assuming the defendant's insurer was negligent in not following the case more closely. Under section 72 of the Civil Practice Act, the courts must apply equitable principles as justice and fairness require, and justice and good conscience may require that a judgment be vacated even though there may have been a lack of due diligence. (*George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973.) Since the requirements of section 10—301(e) are even more generous to a defaulted defendant than section 72; since its requirements fit the facts of this case; and since the facts of this case do not show that the insurer was playing games with the plaintiff's attorney, the judgment of the trial court should be reversed and the default judgment vacated as provided in said section 10—301(e).